McNAB v. P. & H. MORTON ADVERTISING CO.    (No. 6277.)

(Supreme Court, Appellate Division, First Department.    November 13, 1914.)

1. PRINCIPAL AND AGENT (§ 81*)—COMPENSATION—TIME DUE.

A solicitor for an advertising company, who was to receive commissions upon the amount of advertising contracts procured by him, and who was credited by the company with the commissions when the contracts were accepted, although in two cases the amounts were reduced over his protest when the contract price was not collected by the company, is entitled, in the absence of an express agreement as to the time when the commissions become payable, to receive them at the time of the acceptance of the contract, and the company assumed the risk of the performance of the contract which it accepted.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 194–214, 219, 223; Dec. Dig. § 81.*]

2. PRINCIPAL AND AGENT (§ 89*)—ACTIONS FOR COMPENSATION—EVIDENCE—PROCURING CAUSE.

In an action by the assignee of commissions earned by an advertising solicitor, evidence held insufficient to show that the solicitor was the procuring cause of a contract obtained from one whom he had interviewed, but who had signed a contract presented by another solicitor.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 216, 229–239; Dec. Dig. § 89.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PRINCIPAL AND AGENT (§ 81*) — COMPENSATION — CONTRACT PROCURED
THROUGH ANOTHER.
· Where a solicitor for an advertising company had no contract for an
exclusive agency, the fact that he had attempted · to procure a certain
contract, and failed to do so, does not preclude the company from ob-
taining the contract from another solicitor, without becoming liable to
the first for a commission thereon.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 194–
214, 219, 223; Dec. Dig. § 81.*]

4. PRINCIPAL AND AGENT (§ 89*)—ACTIONS FOR COMPENSATION—EVIDENCE.
In an action by the assignee of commissions earned by an advertising
solicitor, a verdict finding that the advertising company accepted a cer-
tain contract procured by the solicitor *held* to be against the weight of
the evidence.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 216,.
229–239; Dec. Dig. § 89.*]

5. INTEREST (§ 46*)—DELAY IN PAYMENT—LIQUIDATED DEMAND.
Where the amount due an advertising solicitor on commissions earned
by him was liquidated, he is entitled to interest thereon from the date
when he made demand.
[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 95–105; Dec.
Dig. § 46.*]

Hotchkiss, J., dissenting in part.

Appeal from Special Term, New York County.

Action by William S. McNab against the P. & H. Morton Advertising
Company. Judgment for plaintiff, and defendant appeals. Reversed,
and new trial ordered, unless plaintiff stipulates to reduce the judgment.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT,.
DOWLING, and HOTCHKISS, JJ.

Arnold L. Davis, of New York City (N. Raymond Heater, of New
York City, on the brief), for appellant.

Julian C. Harrison, of New York City (David Paine, of New York
City, on the brief), for respondent.

LAUGHLIN, J.  This is an action on an assigned claim of one
Lawder to recover commission for services rendered in procuring ad-
vertising for field signboards and other billboards and walls and barns.
owned or controlled by the defendant. The plaintiff claimed commis-
sions aggregating $4,438.65, on account of which he admitted having
received $1,861.20, leaving a balance of $2,577.45, for which, with in-
terest and costs, he demanded judgment. At the commencement of the
trial counsel for the defendant admitted that plaintiff was entitled to
commissions on 15 of the contracts as alleged, and to part of the com-
missions on 10 other contracts, but denied his right to any commissions
on 5 of the contracts. The commissions which the defendant thus ad-
mitted had been earned when the action was commenced aggregated
$1,189.55. The claim of the defendant, therefore, was that all com-
missions. earned had been paid, and that the defendant had advanced
the balance of the amount, which the plaintiff's assignor admitted hav-
ing received, on account of commissions which it was expected would
become due and owing in the future.

With respect to the items in dispute the claims of the defendant
were: (1) That some of the commissions had not become due and.

payable; (2) that the defendant failed to realize on some of the contracts; (3) that plaintiff's assignor was not the procuring cause of one of the contracts; and (4) that another contract secured by plaintiff's assignor was not accepted by defendant. These claims will be discussed in the order stated.

[1] First. The contention that the commissions had not accrued at the time of the commencement of the action involves a construction of the terms of the contract of employment, for it is conceded that Lawder procured and defendant accepted the contracts here involved, and the question at issue between the parties is whether the defendant became liable for all of the commissions upon its acceptance of the contracts, or only liable to pay commissions on the moneys actually received by it. The plaintiff alleges that his assignor was employed by defendant on or about the 10th day of August, 1910, as an advertising agent, and that it promised to pay him a commission of from 10 to 15 per cent., "and in certain cases a special·commission, to be agreed upon between the parties to said employment," on the amount of advertising orders and on renewals thereof procured by him for the defendant "according to the prices at which said advertising was sold." The defendant put in issue the contract as alleged, but admitted that it employed Lawder to solicit advertisement orders upon a commission basis, the amount of commission to be paid to be agreed upon between the parties.

The uncontroverted evidence shows that on or about the 10th day of August, 1910, Lawder and one Morton, president of the defendant, negotiated a contract, part of the terms of which are contained in a declaration in writing bearing that date and signed by the defendant, by its president, in which it is recited in the first person singular, in effect, that the president of the defendant had arranged with Lawder to sell advertising space at specified certified rates per running foot "per month or over, on a yearly contract," on city bulletin boards, and at other rates for advertising space on field boards, and at specified prices per square foot for advertising space on walls and barns at specified commissions, which, it was provided, should be reduced in case the advertising rate was reduced; and it was provided that, if the price should be reduced below specified figures for some of the advertising, "the advisability of accepting the order should be talked over among ourselves, and the commission, etc., agreed upon," and the declaration closed as follows: "All orders to be subject to our approval." It is conceded that the contract thus negotiated was silent with respect to the time that the commissions were to become due and payable, and sheds no light on the question as to whether or not it was intended that they should be paid only if the defendant was paid for the advertising.

Lawder testified that when he was employed he and Morton discussed different matters relating to the business, and that it was agreed that he was to have a drawing account of $25 a week, which was to be increased if the business procured by him warranted it, and that this was at the suggestion of Morton, who said:

"It would be right hard on him if I made a big contract and wanted all the money, and he said there might be times when I would want some money that I hadn't made a contract."

149 N.Y.S.—54

He was permitted to draw $25 before he made a contract, and his drawing account was thereafter increased temporarily to $35 and $40 a week. According to the testimony of Lawder, no agreement was made between him and any one representing the defendant at any time as to when his commissions should be payable; but he claimed, and stated that it was on the advice of counsel, that they were earned as soon as he procured a contract. Morton testified that the agreement was that Lawder was to have a drawing account, and was to draw from his commissions as they were earned, but that nothing was ever said with respect to paying the commissions when the contracts were procured by Lawder, and that no time was set for the payment thereof, and he thought it was stated that commissions would be earned "when the contracts should mature," and he finally said: "I told Mr. Lawder that he was to get the commission as we got the rent."

Lawder was requested by Morton, about the time he was employed, to procure a memorandum book for the purpose of having entries made therein by defendant's secretary from time to time concerning the account between Lawder and the defendant. Lawder purchased the book, and the entries therein were made by the secretary of the defendant, to whom Lawder presented it from time to time. On one page it contained the amounts drawn by Lawder, and on the opposite page a memorandum showing the names of the parties from whom he had obtained contracts and the dates thereof, and the definite period, and the amounts contracted to be paid to the defendant for the definite period, and the rate of Lawder's commissions and the amount thereof for the full definite period, but not for any period depending on renewal options. The uncontroverted evidence is to the effect that those entries were made at or shortly after the acceptance of the contracts by the defendant. On the 10th day of November, 1910, Lawder was thus credited with $15 for commissions on a contract, and on or about the 25th day of March, 1911, the defendant, having failed to receive payment in full on this particular contract, charged back in the memorandum book $7, as if the same had been on that day advanced to Lawder; and on the 29th day of August, 1910, Lawder was credited in this book with $43.20 in commissions on a certain contract, and on the 30th day of April, 1911, it was likewise charged back to him on account of the failure of the defendant to collect.

On both of these occasions, when the attention of Lawder was called to the matter, he protested. It does not appear that there were any other instances in which, after crediting Lawder with commissions, the defendant failed to collect on the contract; but these are the only instances in which it attempted to charge any amount of his commissions back against him. The employment of Lawder contemplated that he was to procure contracts from those desiring advertising space by which they would agree to pay the defendant a specified rental per month for the space rented for the period covered by the contract, and some of the contracts contained provisions for renewals at a specified rate. This is the only material testimony and evidence upon which the question as to when commissions were payable depends.

The plaintiff claims that upon Lawder's procuring a contract, and it

being accepted by the defendant, his commissions for the period for which the contract was to be operative, without the exercise of an option, were earned; and the defendant claims that it was only obligated to pay commissions out of the rents received. The court submitted it to the jury to determine whether there was any express agreement with respect to when commissions were to be paid, and the jury answered the question in the negative. This is a finding adversely to the defendant, in so far as it fails to find an agreement based on the testimony of its president to the effect that he stated to Lawder that the commissions were to be paid when the defendant received the rent, if, indeed, that testimony would otherwise have been of any value to the defendant, for there is much force in the contention of counsel for the respondent that the contract had been made and the parties had entered upon its performance at that time.

The court instructed the jury that, if there was no agreement with respect to the payment of commissions other than evidenced by the writing to which reference has been made, the commissions were earned upon the acceptance by the defendant of a contract procured by Lawder. That, of course, is the well-settled rule with respect to real estate brokerage contracts; and since the defendant reserved to itself the right to reject contracts, and in view of the practical construction of the contract evidenced by the defendant, in effect, crediting Lawder's commissions as soon as the contracts were accepted, I am of opinion that it is reasonable to hold it to the assumption of the risk of performance of contracts which it had accepted. The court, therefore, was right in the instruction given to the jury on this subject.

Second. The views already expressed dispose of the contention that the defendant was not liable for some of the commissions, because it failed to realize on the contracts.

[2] Third. The plaintiff has recovered a commission of $324 on a contract for advertising space made with the defendant by the Darby Candy Company. This claim the defendant rejected, on the ground that Lawder was not the procuring cause of the contract. That question was submitted to the jury, and they found in favor of the plaintiff. I am of opinion that there is no evidence to sustain that finding. Lawder called on the candy company a number of times, extending over a period of about four months, to solicit a contract, and, according to his testimony, on more than one occasion Morton accompanied him. Lawder, however, failed to induce the candy company to make a contract. He had no exclusive agency, and in the same territory the defendant had another soliciting agent, named May. Morton finally sent May to call on the candy company, and he succeeded in getting the president of the company to make a contract, which he delivered to the defendant, and for which he received a commission. Plaintiff does not claim that he procured the contract, but he claims that he paved the way for it, and he bases that claim principally on a letter written by the president of the candy company in its name to defendant, after the contract had been obtained by May, the material part of which is as follows:

"Your Mr. Percy M. Lawder has been visiting us for some months in the interest of your firm for field-sign advertising, and a few days ago your Mr. May called to see us, and we gave him an order for a few signs between Atlantic City and Philadelphia. Had we given the matter any consideration, we should have placed this order with your Mr. Lawder; but it was one of those unfortunate conditions which sometimes arise, and we write you this note in justice to Mr. Lawder, for we feel sure that he has been conscientious in your behalf, and we believe it only our duty to inform you of this transaction."

The writer of the letter testified with respect to how he came to give the contract to May, instead of to plaintiff, as follows:

"Mr. May came into the office one day with a plat showing the location of 21 boards on railroad between Philadelphia and Atlantic City, showing the amount, the number, where they were, named the size of every board, and named his price, after which conversation I told him that I would accept an offer, and I believe the following day he brought a contract to the office, which I signed. * * * The reason I signed the contract with Mr. May was that Mr. May came fully prepared with both the location and price of the various bulletins, while Mr. Lawder had never, to my recollection, made us a definite proposition, and for that reason I signed the contract for May. * * * The only definite proposition that was ever made to me was made by Mr. May."

[3] This testimony was not controverted. Lawder having been unable to procure an order or contract from the candy company did not preclude defendant from obtaining it through another agent without becoming liable to Lawder for commissions.

[4] Fourth. The contract upon which the plaintiff claims commissions, and which the defendant claims was never accepted, was with the California Fig Syrup Company. The question as to whether or not it was accepted by defendant was submitted to the jury, and they answered in the affirmative, and the plaintiff has recovered commissions of $1,169.64 for procuring that contract. The uncontroverted evidence shows that Lawder did procure a contract on which the commissions would be as stated from the California concern. It related to field boards in the vicinity of Buffalo and St. Louis. Lawder testified that Morton informed him that he had purchased 14 signs near Buffalo and 24 near St. Louis, and that he might sell the space at 75 cents per lineal foot per month on a contract for three years. Morton denied that he purchased, or informed Lawder that he had purchased, the signs; but he admitted that he had, in effect, options on the advertising space, and that he had shown Lawder a letter from the builder of the signs containing a description of them. Lawder testified that when he delivered the contract to Morton the latter did not accept it, and said, in effect, that he was in doubt as to whether or not there would be a profit on it, and that he replied that he had followed Morton's instructions; and that, if defendant did not accept the contract, he (Lawder) would fill it himself, and that he left the contract with Morton, and had not seen it since. Morton admitted that the contract was brought to and left with him, but he denied that Lawder stated that he would fill it if the defendant did not accept it, and he testified that the contract was never accepted; and it would seem that the minds of the parties did not meet, for the California Company, after some further negotiations, refused to accept the

boards, and the contract was never performed. This contract was not credited to plaintiff in the memorandum book, as were those which were accepted. This is the substance of the material evidence relating to the question of the procurement and acceptance of this contract. I am of opinion that the verdict of the jury to the effect that it was accepted by the defendant is against the weight of the evidence.

[5] The appellant also complains of the recovery of interest. Interest .had been allowed on the claim from the date on which the testimony shows plaintiff's assignor made a demand: The amount to which he was entitled was liquidated, and it is quite clear that he is entitled to interest. The views already expressed, however, require a new trial, unless the plaintiff stipulates to reduce the recovery by eliminating the two items concerning which we find error.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event, unless the plaintiff shall stipulate to reduce the recovery by the commission items, $324 and $1,169.64, together with the interest thereon from the date of the demand to the date of the rendition of the verdict; and if he shall so stipulate, then the judgment is modified accordingly, and affirmed, without costs.

INGRAHAM, P. J., and SCOTT and DOWLING, JJ., concur.

HOTCHKISS, J. I concur, except as to Darby Candy Company, as to which I dissent.